**UNION ASBESTOS & RUBBER CO. v. GUSTIN-BACON MFG. CO.**

**No. 9476.**

Circuit Court of Appeals
Seventh Circuit.
July 23, 1948.

Rehearing Denied Sept. 24, 1948.

Charles B. Spangenberg and Casper W. Ooms, both of Chicago, Ill., for appellant.

Lee J. Gary, of Chicago, Ill., and Thomas E. Scofield, of Kansas City, Mo., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Plaintiff charged defendant with infringement of United States patents No. 1,903,106, and No. 2,070,861, hereafter referred to respectively by the last three digits of their numbers. Both were issued to Gillies respectively on March 28, 1933, and February 16, 1937, on applications filed on the respective dates of August 7, 1931, and March 29, 1935.

Plaintiff relied on claim 8[1] of the first patent, which discloses a waterproof heat insulating tape, and claim 4[2] of the second patent which discloses a waterproof insulating material. Defendant by answer denied infringement and validity as to each claim in issue.

The court's findings of facts are substantially as follows: Since the issuance of these patents plaintiff has held, and still holds, the entire right, title and interest to them.

Patent 106 relates to a heat insulating tape adapted to be spirally wound upon pipes to be insulated, such as locomotive steam pipes. Claim 8 of this patent covers a tape formed of a filler of heat insulating fibers surrounded by a woven fabric sheath. A layer of waterproofing material is applied to one side of the sheath and extends across the sheath to a sufficient width to contact the waterproofing material carried by adjacent sections or convolutions to form a continuous layer when the tape is wound on a pipe.

Defendant's accused "glassbestos" tape has a filler of glass fibers surrounded by a braided fabric sheath, and the fiber filled

[1] "8. A heat insulating tape comprising a fabric sheath, a filler of heat insulating fiber filling material, and a waterproofing layer applied to one side of said sheath, but not impregnating the filler of said insulating tape, said waterproofing material extended across one of the flat sides of said tape to a sufficient width to contact the waterproofing material carried by adjacent sections of insulating tape to form a continuous waterproofing layer over adjacent sections of tape."

[2] "4. In an insulating covering, the combination of a supporting fabric comprising woven heat insulating fibers, with a filler layer of loosely assembled heat insulating fibres, means for securing said filler to said supporting fabric, an initially plastic waterproofing composition impregnating the fibers at the outer surface of said supporting fabric and providing said fabric with an outer waterproof layer, the edges of said supporting fabric extending beyond said filler and being folded and secured to the body of the fabric to form overlapping flaps on said edges, and means for drawing the covering about a pipe and drawing the overlapping flaps into sealing relation with each other."

sheath is cemented to a strip of waterproof fabric so that a portion of the strip extends beyond the sheath at one of the marginal edges to form a lap. When the tape is spirally wound on a pipe the lap portion of each convolution of the tape shingles over or overlaps the fabric strip of the adjacent convolution. There is no application of a waterproof coating directly to a surface of the fabric sheath.

Prior United States Patents to Gillies, No. 1,470,723, Medernach, No. 1,715,072, Cilley, No. 1,803,840, and British patent to Kristalco, No. 234,447, cover insulating tape of identical construction to claim 8 in suit in so far as the filler material and sheath are concerned and lack only the waterproofing layer.

The British patent to Gedge, No. 3712, covers an insulating tape formed of a pad of insulating fibers cemented to a fabric strip with a lap or overplus along one of its marginal edges, which lap is adapted to be shingled over the fabric strip of the adjoining convolution when the tape is wound on a pipe. The fabric strip is waterproofed and the construction of the tape is the same as defendant's "glassbestos" tape except that the pad of insulating fibers is not enclosed within a fabric sheath.

British patent to Simon, No. 23,902, covers an insulating tape made up of a filler of insulating fibers within a braided or woven fabric sheath. The sheath of fibers is cemented to a fabric strip in a manner to leave a lap portion at a marginal edge of the strip extending beyond the sheath. When the tape is laid spirally on a pipe the marginal lap shingles over adjoining convolutions as in the British Gedge construction and defendant's "glassbestos" tape. The strip or backing to which the sheath is cemented is waterproofed in the same fashion in British Gedge and defendant's "glassbestos" tape.

United States patents to Macan, No. 1,-134,475, and Carroll, No. 1,317,957, are prior art to the Gillies patent No. 106 and disclose the idea of waterproofing fabric pipe covering.

It does not appear that the above-named patents to Macan, Cilley, Gedge, Simon and Kristalco were ever considered by the Patent Office although they are prior art to claim 8 to patent 106.

The Gillies patent No. 861 relates to a flexible pipe covering or fabric backing to which is cemented a filler layer of loosely assembled heat insulating fibers. The covering is adapted to be wrapped about a pipe to be insulated, with joints at the longitudinal and end marginal edges. At the longitudinal edges the backing or cover extends beyond the filler and is folded back and secured to the body of the fabric to form overlapping flaps. Upon application to the pipe, the covering is held in place by a lacing passed over hooks located along opposite edges of the cover at the joints. A waterproof layer is applied to the outer surface of the supporting fabric or covering.

Both appellee's accused device, and appellant's commercial device utilize overlapping flaps along the longitudinal margins of their covers without folding and securing the edges to the body of their supporting fabrics, thereby following the teachings of Lord's patent, No. 742,689, instead of claim 4 of the patent in suit.

Since the inventor Gillies acquiesced in the refusal of the Patent Office to grant him claims for a covering employing only overlapping flaps at the marginal joints he cannot now recapture the invention of such claims, which was appropriated by the patented art before he entered the field.

The securing or cementing of loosely assembled heat insulating fibers to a supporting fabric of woven, heat insulating fibers and overlapping the edges of the covering at the joint is a structure shown in Gillies, No. 1,875,297, Macan, No. 1,134,-475 and Carroll, No. 1,317,957.

The application of a waterproofing composition to the outer surface of the supporting fabric in a pipe covering to impregnate the fabric and form a waterproof layer is found in the disclosures of Macan and Carroll and in the catalog sheets of the Johns-Manville Corporation.

To interleaf the marginal edges of a pipe covering, whether of fabric or metal, to form a tight joint where the longitudinal edges come together, was practiced in the prior art as disclosed by patents to Wood, Wilson, Lord, Galbraith, and Williams.

The longitudinal edges of the covering of Lord are doubled back and secured to the body of the fabric by the stapling action of hooks. The attachment of the inner protecting strip or tongue to one of the edges forms a double flap along that edge. This double flap is interleafed with the single flap along the opposite edge when the joint is made.

In 1903, according to Lord, No. 742,689, hooks and a lacing were used at the joint of a pipe covering for drawing the covering about a pipe and drawing together the overlapping flaps at the joint.

Although the filler layer of the covering is set forth in claim 4 in issue, as heat insulating fibers, nothing but asbestos fibers are contemplated or specified in either the Gillies patent No. 861 or his patent No. 1,-875,297, to which the former patent refers, so the claim must be read as though limited to asbestos fibers.

The District Court concluded as matters of law that each patent in issue was invalid and that neither was infringed by the defendant, and that the bill of complaint should be dismissed at plaintiff's costs. A decree was entered accordingly and from that decree this appeal is prosecuted.

It is not denied that claim 8 of patent 106 was granted in a crowded art and it must be strictly construed in the light of the specification. This claim clearly describes the filler as one of heat insulating fiber filling material. For such purpose the patent in the specification uses asbestos as its preferred embodiment of such element, while appellee uses a glass fiber filler for such purpose. Each constitutes a filler of heat insulating fiber filling material, and they differ only in kind. They perform the same service, in the same manner, by the same means and for the same purpose.

We are convinced that this particular element of the accused construction does read upon the same relative element of patent 106, as set forth in claim 8. True the specification refers neither directly nor indirectly to any sort of a filler except asbestos, yet applicant was only required to set forth his preferred sort of filler material, as defined by the claim, and by so doing he would not be precluded from protection against the use of any sort of filler material which would fully meet the requirements of the claim. Furthermore, appellant contends that infringement of claim 8 cannot be avoided merely because the waterproofing layer of appellee's heat insulating tape is specifically different from that of the patent even though such difference is not referred to in the claim, which discloses "a waterproofing layer applied to one side of said sheath, but not impregnating the filler of said insulating tape."

The accused device of appellee attaches to the sheath by cementing with an adhesive and waterproofing strip. It does not apply the waterproofing compound to the sheath itself. Furthermore, the claim specifies that the waterproofing material should extend across one of the flat sides of the tape to a sufficient width to contact the waterproofing material carried by adjacent sections of insulating tape to form a continuous waterproofing layer of adjacent sections of tape. In explaining this limitation the specification uses the following language:

"Referring to figure 3, it will be observed that the waterproof layer not only extends across the outside of the sheath but over the edge of the sheath to a point so located that the adjacent edges of the tape have their waterproof layers in contacting engagement with each other to provide the outside of the pipe with a substantially continuous layer of waterproofing material without any cracks.

"In some embodiments of the invention practically three sides of the tape may be covered with waterproofing, but the waterproofing preferably does not cover more than half of the tape because it is desirable to maintain the waterproof layer at a distance from the hot pipe even at the edges of the tape. For this purpose the waterproof layer should preferably not extend down between the edges more than one-half or two-thirds the thickness of the tape."

It seems clear to us that the claim requires the application of waterproofing directly to the sheath, and it must extend over the edges, as described in the patent and shown in the drawing. The waterproofing material of appellee's sheath does

not extend over the edges to contact the waterproofing material of adjacent sections or convolutions. Instead, the waterproofed strip has a lap which is shingled over the strip of the adjacent section of tape when it is laid spirally upon the pipe. Aside from the question of invalidity, we think the District Court ruled correctly in holding the claim was not infringed, due to the difference in applying the waterproofing layer.

On the question of validity of this claim, appellant contends that many prior art patents have been cited and discussed by the parties and by the court which do not contain all of the elements in combination which are present in this patent. This is quite true. However, many of them were not used for the purpose of showing anticipation of appellant's combination of elements, but rather were used for the purpose of showing that all of the elements of appellant's combination were quite old in the art, and we shall not further discuss this matter. We refer only to British patents No. 3712 to Gedge (1872); No. 23,902 to Simon (1895), and No. 234,447 to Kristalco (1925). These patents were not considered by the Patent Office. They contain all the features of claim 8 in suit, and every element disclosed by Gillies patent 106. The District Court discussed this patent fully and came to the conclusion that it was invalid, and we think rightly so.

Gillies Patent No. 861 here in issue relates to a blanket-type waterproof insulating material designed to be applied in sections on train pipes. The covering is adapted to be wrapped about a pipe to be insulated, with joints at the longitudinal and end marginal edges. At the longitudinal edges the backing or cover extends beyond the filler and is folded back and secured to the body of the fabric to form overlapping flaps. The covering is held in place by the lacings fastened over hooks located along opposite sides of the cover at the joints. A waterproof layer is applied to the outer surface of the supporting fabric. The disclosures of this patent are above set forth in the special findings. The District Court was of the opinion, and so held, that the patent, as well as defendant's accused device, utilized overlapping flaps along the longitudinal margins of their covers without folding and securing the edges to the body of their supporting fabric, and that they both followed the teachings of prior United States patent to Lord, No. 742,689.

We think that no patentable invention or element thereof is disclosed in this patent which does not appear in the Lord patent, and we are convinced that the court's ruling that this patent is invalid is correct. Of this we have no doubt, and for that reason we are not permitted to consider appellant's alleged commercial success.

Affirmed.